```
           IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF KANSAS


DUSTIN JOHNSON,

                    Plaintiff,

vs.                                Case No. 13-1401-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                    Defendant.
```

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On July 16, 2013, administrative law judge (ALJ) Michael D. Shilling issued his decision (R. at 13-26). Plaintiff alleges that he had been disabled since November 14, 2011 (R. at 13). Plaintiff meets the insured status requirements for social security disability benefits through December 31, 2015 (R. at

15). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity after the alleged onset date (R. at 15). At step two, the ALJ found that plaintiff had severe impairments of a history of avascular necrosis with joint replacement, substance abuse disorder, depression, anxiety and post-traumatic stress disorder (R. at 15). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 16). After determining plaintiff's RFC (R. at 17-18), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 24). At step five, the ALJ found that plaintiff could perform jobs that exist in significant numbers in the national economy (R. at 25-26). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 26).

**III. Did the ALJ err in his consideration of the treating source opinions of Dr. Hawkins?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of

all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.  Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser

6

weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Dr. Hawkins is plaintiff's treating physician. On April 24, 2012, he wrote to plaintiff stating that he was not able to provide him with a statement of disability. Dr. Hawkins indicated that it was his opinion that plaintiff was not able to work in the field in which he was trained, but this did not mean that he was not able to work in other fields that are not as

labor intensive.  He encouraged plaintiff to seek out such employment and consider entering into training to be prepared for a different field of work (R. at 528).  On May 4, 2012, the treatment notes of Dr. Hawkins indicated that he told plaintiff that although it is unfortunate that he is unable to continue in his current field, that did not make him unable to work (R. at 595).

However, following an examination of the plaintiff on March 11, 2013 (R. at 645), Dr. Hawkins filled out a medical source statement-physical limiting plaintiff to lifting 10 pounds occasionally and 5 pounds frequently.  He stated that plaintiff could stand/walk for 30 minutes at a time, and needed a 1 hour break after that time.  He also stated that plaintiff could sit for 15 minutes at a time, and needed a 30 minute break between episodes of sitting.  He opined that plaintiff could never climb or crawl, and could only occasionally stoop, kneel, crouch, and reach.  He indicated that plaintiff should avoid any exposure to extreme cold, weather, hazards and heights, he should avoid moderate exposure to extreme heat and vibration, and should avoid concentrated exposure to wetness/humidity and dust/fumes.  He further opined that plaintiff needed to lie down every 15-30 minutes for 45-60 minutes at a time (R. at 642-643).

The ALJ stated that this opinion was not assigned controlling weight because the record reveals that plaintiff had

8

only visited Dr. Hawkins twice in the last twelve months.  He gave no weight to the opinion because it did not state the total number of hours that plaintiff could sit, stand or walk in an 8 hour workday, and it appeared to have been completed based on the plaintiff's subjective input (R. at 20-21).  The ALJ gave great weight to the opinions expressed by Dr. Hawkins in 2012 that plaintiff could work in other fields (R. at 21).

When the ALJ rejects an opinion for a treating physician, he must give specific and legitimate reasons for rejecting the opinion.  First, the ALJ stated that the 2013 opinion by Dr. Hawkins "appeared to have been completed based on the claimant's subjective input" (R. at 21).  On the same date that Dr. Hawkins filled out the RFC evaluation, he conducted a physical examination of the plaintiff.  He found that plaintiff had a fairly good range of motion of the right shoulder, but also found that his left shoulder was very limited in abduction (movement).  Plaintiff can lift it about 90 degrees but can't go above his shoulder without significant discomfort.  He also noted that both arms are weak.  He diagnosed plaintiff with chronic pain (R. at 645).

In the case of Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004), the court held:

> The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was

9

> based only on claimant's subjective complaints and was "an act of courtesy to a patient." Id. The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted; emphasis in original). And this court "held years ago that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician." Id. at 1253.

Subsequently, in the case of Victory v. Barnhart, 121 Fed. Appx. 819 (10th Cir. Feb. 4, 2005), the court held:

> The ALJ's finding that Dr. Covington's opinion was based on claimant's own subjective report of her symptoms impermissibly rests on his speculative, unsupported assumption. See Langley, 373 F.3d at 1121 (holding that ALJ may not reject a treating physician's opinion based on speculation). We find no support in the record for the ALJ's conclusion. Nothing in Dr. Covington's report indicates that he based his opinion on claimant's subjective complaints, and the ALJ's finding ignores all of Dr. Covington's examinations, medical tests, and reports. Indeed, the ALJ's discussion of Dr. Covington omits entirely his March 22, 2001 examination and report. His April 3, 2001 statement might well have been based on his recent first-hand

10

> examination and observation of claimant during this examination, performed less than two weeks earlier, rather than on claimant's subjective complaints, as the ALJ speculated. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (noting that the treating physician's opinion may "reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time").

121 Fed. Appx. at 823-824.

As Langley makes clear, the ALJ must have a legal or evidentiary basis for asserting that a medical source report was based on plaintiff's subjective complaints. However, the ALJ did not cite to either a legal or evidentiary basis for his assertion that the opinions of Dr. Hawkins were based solely or primarily on plaintiff's subjective complaints. In fact, the form filled out by Dr. Hawkins indicates that his opinions were based on his medical history, clinical findings, laboratory findings, diagnosis, and treatment (R. at 643). Furthermore, Dr. Hawkins had examined the plaintiff on the same day that he filled out the RFC form. The medical records also show that plaintiff was examined by Dr. Hawkins on February 3, 2012, March 2, 2012, April 6, 2012, May 4, 2012 and June 22, 2012 (R. at 498-99, 500, 532-33, 527, 595, 592-594). As the court stated in Victory, Dr. Hawkins' opinions in March 2013 might well have been based on his first-hand examination and observation of plaintiff during his examination on the same date that he filled

11

out the RFC form, rather than on plaintiff's subjective complaints, as the ALJ speculated.

Second, the ALJ stated that Dr. Hawkins had only seen plaintiff twice in the last 12 months. However, as noted above, Dr. Hawkins saw plaintiff on February 3, 2012, March 2, 2012, April 6, 2012, May 4, 2012, June 22, 2012 and March 11, 2013, or six times in a 13 month period.

Third, the ALJ gave much greater weight to the opinions of Dr. Hawkins in 2012 that plaintiff should be able to find other work that is not as labor intensive. However, according to the ALJ, plaintiff underwent a partial replacement of his right shoulder on June 27, 2012, and a partial replacement of his left shoulder on November 12, 2012 (R. at 18). Therefore, plaintiff's medical condition underwent a material change from the time that Dr. Hawkins opined in April/May 2012 that plaintiff could find other work, and the opinions expressed by Dr. Hawkins in March 2013.

The ALJ cannot ignore the fact that a major change in plaintiff's medical condition occurred between the opinions expressed by Dr. Hawkins in 2012 and those expressed in 2013, i.e., plaintiff had a partial replacement of his left and right shoulders in June and November 2012. In fact, Dr. Hawkins, in his medical notes of March 11, 2013, discussed the range of motion in plaintiff's shoulders, particularly the limitation in

motion in the left shoulder, the weakness in his arms, and diagnosed chronic pain (R. at 645).  There is no legal or evidentiary basis for finding that the opinions of Dr. Hawkins in 2013 were based on plaintiff's subjective complaints.  Dr. Hawkins examined plaintiff on the same day he filled out the RFC form, and his findings may well have been based on that examination and observation of the plaintiff during that examination, including his findings regarding plaintiff's shoulders and the presence of chronic pain following partial replacement of both shoulders in 2012.

Fourth, the ALJ assigned no weight to the opinion of Dr. Hawkins because the opinion did not state the total number of hours that plaintiff could sit, stand or walk in an 8 hour workday.  However, the ALJ did state that plaintiff would need a 1 hour break after standing/walking for 30 minutes, and would need a 30 minute break after sitting for 15 minutes (R. at 642). Furthermore, the mere fact that Dr. Hawkins did not offer an opinion on how long plaintiff could sit, stand or walk in an 8 hour workday does not provide a legitimate basis for giving no weight to his other opinions regarding plaintiff's physical limitations.  For these reasons, the court finds that the ALJ failed to give legitimate reasons for rejecting the opinions of Dr. Hawkins.

On remand, the ALJ will need analyze the opinions of Dr. Hawkins in accordance with the case law set forth above, and must give specific and legitimate reasons for the weight accorded that opinion.  Plaintiff also argues that the ALJ erred in his RFC findings and his findings regarding plaintiff's credibility.  The court will not address these issues in detail because they may be affected by the ALJ's resolution of the case on remand after the ALJ gives proper consideration to the opinions of Dr. Hawkins.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

However, on remand, the ALJ should also consider the opinions of Dr. Hawkins in light of the opinions of two other treating physicians, Dr. McLellan (R. at 488-489, Feb. 1, 2012), and Dr. Hodges, plaintiff's orthopedist (R. at 660-661, March 13, 2013).  An ALJ must not consider the opinions of one treating or examining source in isolation, but his opinions must be considered in light of the entire evidentiary record, including the opinions and assessments of other treating or examining sources.  The court is concerned with the necessarily incremental effect of each individual report or opinion by a source on the aggregate assessment of the evidentiary record, and, in particular, on the evaluation of reports and opinions of other medical treating or examining sources, and the need for

the ALJ to take this into consideration.  See <u>Lackey v. Barnhart</u>, 127 Fed. Appx. 455, 458-459 (10th Cir. April 5, 2005).

    IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

    Dated this 12th day of March 2015, Topeka, Kansas.

                                              s/Sam A. Crow
                                              Sam A. Crow, U.S. District Senior Judge